IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| OMOA WIRELESS, S. DE R. L., | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No.: 1:06-cv-00148-WLO-WWD |
| v. | ) |
| | ) |
| UNITED STATES OF AMERICA, et al. | ) |
| | ) |
| Defendants. | ) |

**UNITED STATES' PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

Pursuant to the Court's Order dated August 14, 2009, the United States submits the following:

**I.    Proposed Findings of Fact**

1.    In accordance with 26 U.S.C. § 6303 a delegate of the Secretary of Treasury made the following assessments of federal income tax against Gary Boggs:

| **Tax Period** | **Tax/Penalty** | **Assessment Date** | **Assessment** |
|---|---|---|---|
| 1998 | Return filed/tax assessed | September 20, 1999 | $8,192.00 |
| 1998 | Additional tax assessed by examination | November 25, 2002 | $304,325.00 |
| 1999 | Return filed/tax assessed | August 21, 2000 | $5,216.00 |
| 1999 | Additional tax assessed by examination | November 25, 2002 | $198,337.00 |

2.    In 1988, Boggs' former wife, Margaret Boggs, conveyed the Fink Street property to Boggs.

3.    Gary Boggs and Kathleen Primavera were married in 1990.

4.    In 1991, Boggs and Primavera acquired the Faith Road property.

1

5. By deed recorded September 17, 1997, Boggs and Primavera acquired the Wood Duck Cove property.

6. By deed recorded May 11, 2000, Boggs' family members conveyed Tracts 1 & 2 to Boggs and Primavera.

7. To shield their assets from their creditors during their marriage, Boggs and Primavera established the Corredores Controamericanos Holdings trust in September 2000.

8. Corredores was a trust purchased from Commonwealth Trust Company (CTC) and its agents, including defendant Constance Taylor.

9. The principals of CTC, including defendants John Michael Crim and Constance Taylor, have been convicted of conspiring to defraud the United States and corruptly attempting to obstruct the Internal Revenue Service, causing millions of dollars of tax losses. *See* Case No.2:06-cr-00658-ABB (U.S.D.C. E.D.Pa.)

10. Boggs and Primavera were the managing directors of Corredores.

11. On October 30, 2002, Boggs and Primavera transferred the Fink Street, Wood Duck Cove, and Tract 1 & 2 properties to Corredores. Corredores did not give consideration to Boggs and Primavera for these properties.

12. On January 10, 2003, Boggs and Primavera transferred the Faith Road property to Corredores. Corredores did not give consideration to Boggs and Primavera for this property.

13. Boggs and Primavera retained all beneficial ownership, use, and control over the properties after the transfers.

14. Boggs and Primavera retained the right to convey the properties after the transfers to Corredores.

15. In 2002, Primavera signed the Ramona Way Society trust agreement.

16. Primavera opened a bank account in the name of Ramona Way Society in Denmark and transferred over $250,000 to the account.

17. Primavera was the "managing director" of Piedmont Properties–another trust purchased from Commonwealth Trust Company. Primavera used this trust to shield her assets from creditors.

18. Boggs and Primavera divorced on October 30, 2003.

19. Boggs and Primavera entered into a property settlement agreement (PSA) on February 10, 2003.

20. The PSA provided that family heirloom real property (Tract 1 & 2) would be retained by Boggs. The PSA was silent regarding the disposition of how the other real properties would be allocated after the divorce.

21. On June 8, 2006, the deed of transfer regarding the Wood Duck Cove property from Corredores to Primavera was recorded.

22. On November 3, 2003, Boggs established the Northstar Properties trust.

23. Northstar properties was another trust that Boggs established with the help of CTC and Taylor.

24. On November 29, 2003, Corredores transferred the Fink Street, Faith Road, and Tract 1 & 2 properties to Northstar Properties.

25. Boggs was insolvent as a result of the transfers of the real properties to Corredores.

26. The purpose of Northstar was to permit Boggs to transfer the properties he

received in the divorce - Fink Street, Faith Road, and Tract 1 & 2 - to a new trust. Additionally, Boggs sought to continue to hide and shield his assets from creditors.

27. Boggs maintained full ownership, use and control of all properties that were titled in Northstar's name.

28. Boggs and CTC, with aid from Constance Taylor, created fictitious entities and documents to make it appear that the properties titled in Northstar's name were encumbered by liens. This was done to hide Boggs' equity in the properties.

29. On July 8, 2004, Northstar transferred the Faith Road, Fink Street, and Tract 1 & 2 properties to plaintiff Omoa Wireless. The transfers were for no valid consideration.

30. Boggs caused Northstar transfer to properties to Omoa to further shield his assets from creditors, including the United States.

31. Boggs received inadequate consideration for the property transfers to Omoa.

32. The transfer of the properties to Omoa comported with CTC's recommendation to use foreign entities to nominally own assets because this scheme made it difficult for domestic creditors to identify and attach the assets.

33. Taylor prepared various correspondence on Boggs/Northstar's behalf regarding the purported transfers of the properties to Omoa in exchange for a purported percentage of ownership in Omoa.

34. All of the documents referenced in paragraph 33 were shams and were created in order to bolster the fictitious transaction.

35. At all relevant times, Boggs retained actual ownership, control and use of the properties that were nominally held in Omoa's name.

4

5576469.2

Case 1:06-cv-00148-WO-WWD   Document 171   Filed 06/15/10   Page 4 of 11

36. Boggs and his girlfriend continued to live at the Fink Street property after the conveyances to Corredores, Northstar and Omoa.

37. Boggs and a company he owned paid to develop the Faith Road property after it was purportedly transferred to Omoa.

38. Boggs was never reimbursed by Omoa for the work he and his company did on the Faith Road property.

39. Boggs continues to pay for the utilities at the Fink Street property.

40. Boggs paid for the property insurance for the Fink Street property from 2005-2006.

41. Boggs continued to use the Fink Street property as a home office after the transfers.

42. Boggs obtained a permit and paid for the tap fee to connect the Fink Street property to the Town of Faith's water service.

**II.     Proposed Conclusions of Law**

43. Federal tax liens arose on the date of the assessments referenced in paragraph 1.

44. The United States' assessments against Gary Boggs are entitled to a legal presumption of correctness. *See e.g.*, United States v. Janis, 428 U.S. 433, 440 (1976); U.S. v. Sarubin, 2007 WL 3408550, *3 (4th Cir. 2007); United States v. Hardy, 299 F.2d 600, 606 (4th Cir.1962); Psaty v. United States, 442 F.2d 1154, 1160 (3d Cir. 1971).

45. The United States can establish its *prima facie* case regarding assessments by introducing into evidence a Certificate of Official Record. The United States can "establish[ ] a *prima facie* case in support of the tax liability charged in the complaints when it introduce[s] into

evidence the certified copies of the certificates of assessment," United States v. Pomponio, 635 F.2d 293, 296 (4th Cir.1980).

46. To date, Boggs has not paid the assessments referenced in paragraph 1. As such, as of February 8, 2010, Boggs owes the United States $1,409,634.08, plus penalties, interest, and statutory additions accruing after that date.

47. A federal tax lien even attaches to real property that a husband and wife hold jointly even though the other spouse is wholly innocent of that liability. *See* United States v. Rodgers, 431 U.S. at 710.

48. The United States' tax liens followed the properties through the subsequent transfers to Primavera, Corredores, Northstar and Omoa because the liens arose on the properties on the dates of the assessments. See 26 U.S.C. §§ 6321 and 6322; United States v. National Bank of Commerce, 472 U.S. at 719; United States v. Bess, 357 U.S. 51, 57 (1958). Further, liens arose on the properties owned by Corredores because Corredores was the nominee of Boggs.

49. The United States may seek to proceed against a nominee or alter ego of a taxpayer for the "purpose of satisfying the taxpayer's obligations." Lemaster v. United States, 891 F.2d 115, 119 (6th Cir. 1989) (citing Loving Savior Church v. United States, 728 F.2d 1085 (8th Cir. 1984) (per curiam)); Shades Ridge Holding Co. v. United States, 888 F.2d 725, 728 (11th Cir. 1989) ("[p]roperty of the nominee or alter ego of the taxpayer is subject to the collection of the taxpayer's tax liability") (citing G.M. Leasing Corp. v. United States, 429 U.S. 338, 350-51 (1977)), cert. denied, 110 S. Ct. 1472 (1980); see also Wolfe v. United States, 798 F.2d 1241, 1243-44, reh'g denied, 806 F.2d 1410 (9th Cir. 1986), cert. denied, 482 U.S. 927 (1987).

6

5576469.2

Case 1:06-cv-00148-WO-WWD   Document 171   Filed 06/15/10   Page 6 of 11

50. Factors to be considered in determining nominee status for the purpose of attaching federal tax liens on one individual's property based on the tax liabilities of another are: (1) "the treatment by the taxpayer of the asset as his own;" (2) "control over the [alleged nominee] by the taxpayer or a close relationship between them;" (3) "use of the [alleged nominee's] funds to pay personal expenses of the taxpayer;" (4) "transfer of the property to the [alleged nominee] for a nominal sum;" (5) "the fact that the [alleged nominee] supported the taxpayer;" (6) "whether the taxpayer expended personal funds for the property;" (7) "whether the taxpayer enjoys the benefit of the property;" and (8) "whether the record titleholder interfered with the taxpayer's use of the property." United States v. Holland 637 F.Supp.2d 315, 320 (E.D.N.C.,2009); citing Greer, 383 F.Supp.2d 861, 868 (W.D.N.C. 2005); see also Hill v. United States, 844 F.Supp. 263, 271 (W.D.N.C.1993).

51. Corredores, Northstar, and Omoa are nominees of Boggs.

52. Under North Carolina law, a transfer by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made, if the debtor made the transfer: (1) with intent to hinder, delay, or defraud any creditor of the debtor; or (2) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor intended to incur, or believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due. N.C.G.S.A. § 39-23.4; see also *Wilkinson v. United States*, 972 F. 2d 345, *4-5 (Table)(4th Cir. 1992).

53. Should the United States not prevail on its nominee claims, the Fink Street, Faith Road, and Tract 1 & 2 transfers from Corredores to Northstar, and from Northstar to Omoa were fraudulent.

54. Corredores, Northstar, and Omoa have no interest in any of the properties.

55. The United States is entitled to foreclose on all of the properties.

56. A valid separation agreement that waives rights to equitable distribution will be honored by the courts and will be binding upon the parties. *Hagler v. Hagler,* 354 S.E.2d 228, 232 (N.C. 1987) citing N.C.G.S. § 52-10 (1984); *Blount v. Blount*, 323 S.E.2d 738 (1984); *Blankenship v. Blankenship*, 234 N.C. 162, 66 S.E.2d 680 (1951).

57. It is a well-settled principle of legal construction that "[i]t must be presumed the parties intended what the language used clearly expresses, and the contract must be construed to mean what on its face it purports to mean." *Hagler,* 354 S.E.2d at 234 quoting *Indemnity Co. v. Hood*, 40 S.E.2d 198, 201 (1946).

58. Where a property is titled in the name of a husband and wife together as tenants by the entirety there is a presumption that the spouse paying the consideration intended to make a gift of the entirety interest to the other spouse. *Dillingham v. Dillingham,* 688 S.E.2d 499 (N.C. App. 2010) citing *Mims v. Mims* 286 S.E.2d 779, 789 (1982.) Therefore, to establish a *prima facie* case of a resulting trust, the spouse asserting a claim of a resulting trust must rebut this presumption by clear, cogent, and convincing evidence. *Dillingham,* 688 S.E.2d at 504.

59. To rebut the presumption of a gift, a party is entitled to rely on "all the attendant facts and circumstances of the transaction" to show their intent at the time of the transaction. *Mims*, 286 S.E.2d at 790. The declaration of the party claiming the resulting trust made at or before, *but not after,* title passes is admissible to show the intent. Id. A party's intention also may be shown by evidence of facts and the statements of the parties provided that they were made contemporaneously with the purchase. Id. Admissions of the grantee and the parties'

conduct both before and after title passes are also admissible to show the intent of the payor at the time the deed was made. Id.

60. Primavera's statement subsequent to the property transfer or the mere fact that her money was used to purchase the Wood Duck Cove property is insufficient under North Carolina law to establish a resulting trust.

61. Primavera has no interest in the Fink Street, Faith Road, and Tract 1 & 2 properties under the PSA, the doctrine of resulting trust, or any other legal theory.

62. Primavera has a one-half interest in the Wood Duck Cove property.

63. Primavera is not entitled to equitable relief because she is barred by the doctrine of unclean hands. *See Swan Quarter Farms, Inc.v. Spencer*, 514 S.E.2d 735, 738 (N.C.App. 1999); *Layman v. C.C.F. of Georgia, Inc.*, 161 F.Supp.2d 666, 669 -670 (W.D.N.C.2001)*; Swan Quarter Farms. Inc. v. Spencer*, 514 S.E.2d 735, 738 (1999).

64. The United States is entitled to retain all of the foreclosure proceeds of the Faith Road, Fink Street, and Tract 1 & 2 properties.

65. Boggs and Constance Taylor asserted their Fifth Amendment rights during the course of their depositions. As such, the United States is entitled to an adverse inference for each question Boggs and Taylor failed to answer. *See Baxter v. Palmigiano*, 425 U.S. 308, 319, (U.S. 1976)("Silence is often evidence of the most persuasive character," and the "(f)ailure to contest an assertion . . . is considered evidence of acquiescence . . . if it would have been natural under the circumstances to object to the assertion in question."); *Arminius Schleifmittel GmbH v. Design Indus., Inc.*, 2008 WL 819032, 2 fn. 1 (M.D.N.C. 2008)("[W]hen a defendant asserts a Fifth Amendment privilege against self-incrimination in a civil case, that assertion may

ultimately result in a conclusion at trial or on a motion for summary judgment that the plaintiff's evidence is unrebutted and that defendant is unable to establish any genuine issue of material fact.); *see also ePlus Technology, Inc. v. Aboud*, 313 F.3d 166, 179 (4th Cir. 2002)("In a civil proceeding, a fact-finder is entitled to draw adverse inferences from a defendant's invocation of the privilege against self incrimination").

DATE: June 15, 2010                             Respectfully submitted,

                                        ANNA MILLS S. WAGONER,
                                      United States Attorney

                                      /s/ Brittney N. Campbell
                                      BRITTNEY N. CAMPBELL
                                      Brittney N. Campbell Bar No: NC31433
                                      BENJAMIN J. WEIR
                                      Trial Attorneys, Tax Division
                                      United States Department of Justice
                                      Post Office Box 227
                                      Ben Franklin Station
                                      Washington, DC 20044
                                      Telephone: (202) 353-2260
                                      E-mail: brittney.n.campbell@usdoj.gov

CERTIFICATE OF SERVICE

I certify that on June 15, 2010, I served the foregoing via the court's ECF filing protocol:

    Frederick M. Thurman Jr.
    Shumaker, Loop & Kendrick, LLP
    128 S. Tryon St., Suite 1800
    Charlotte, NC 28202

    Pamela Duffy
    Wishart, Norris, Henninger & Pittman, P.A.
    3120 S. Church Street
    Burlingon, NC 27215

    David W. McDonald
    Hicks, McDonald, Noecker, LLP
    100 S. Elm Street, Suite 510
    Greensboro, NC 27401.

and upon the following via postage prepaid U.S. Mail:

    Constance Taylor
    #12803-081
    FPC Alderson,
    P.O. Box A
    Alderson, WVA 24910.

    <u>/s/ Brittney Campbell</u>
    BRITTNEY CAMPBELL